IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**DOLLY GAINEY**                                                                                     **PLAINTIFF**

**V.**                                         **CIVIL ACTION NO. 3:13CV1076 HTW-LRA**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                           **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Dolly Gainey appeals the final decision denying her application for Disability Insurance Benefits ("DIB"). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

### Factual and Procedural Background

On March 17, 2010, Gainey protectively filed a Title II application for disability benefits alleging she became disabled on January 3, 2008, due to osteoarthritis, nerve pain, and a neck injury. She later amended her onset date to April 1, 2009. She was 52 years old at the time of filing, and has a GED with past work experience as a refurbishing operator. The application was denied initially and on reconsideration. Gainey appealed the denial and on January 4, 2012, Administrative Law Judge James F. Barter ("ALJ") rendered an unfavorable decision finding that Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's

request for review.  She now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.  At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2009.  At steps two and three, the ALJ found that although Plaintiff's "status post surgery on cervical spine times two, status post ulnar nerve transposition surgery, and mild degenerative disc disease of the lumbar spine" were severe, they did not meet or medically equal any listing.  At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work, except she is limited to lifting/carrying and pushing/pulling twenty pounds occasionally and ten pounds frequently.  She can also stand, walk, and sit for six hours in an eight-hour workday, but can only occasionally use her left upper extremity.  Based on vocational expert testimony, the ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work as a gate-attendant, a flagger in highway construction, and a motel desk-clerk.[2]

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2] ECF No. 6, pp. 13-24.

**Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295 (5th Cir. 1992)).  This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

**Discussion**

Plaintiff argues that the Commissioner's decision should be reversed or alternatively remanded because the ALJ failed to apply the proper legal standards in considering the medical opinion evidence, and failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles.  The Court rejects these arguments for the reasons that follow.

As her first point of error, Plaintiff argues that the ALJ failed to properly consider the medical source statement of her family doctor and treating physician, Dr. Russell

Belenchia. Specifically, she asserts that the ALJ failed to fully explain his reasons for discounting Dr. Belenchia's opinion, and failed to perform the statutory analysis outlined in 20 C.F.R. § 404.1527(c).

The Fifth Circuit has long held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views" under the criteria set forth in 20 C.F.R. § 404.1527(c)(2). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original). The statutory analysis requires the ALJ to consider the length of treatment; the frequency of examination; the nature and extent of the treatment relationship; the extent to which his opinions were supported by the medical record; the consistency of his opinion with the record as a whole; and the specialization of the physician. *Id*. However, an ALJ is required to perform the statutory analysis only when the ALJ "rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). An ALJ need not consider each of the § 404.1527(c) factors where "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Walker v. Barnhart*, 158 Fed.App'x. 534 (5th Cir. 2005) (citing *Newton* 209 F.3d at 458). The ALJ was presented with competing first-hand medical evidence to support his assessment of Dr. Belenchia's medical source statement in this case.

4

The ALJ found Dr. Belenchia's opinion was entitled to no weight because it was not supported by his treatment notes and was inconsistent with the weight of the evidence. Plaintiff counters that she was treated by Dr. Belenchia eleven times during the relevant time period, and no other physician treated her more frequently or had a more longitudinal picture of her condition. While clinic records confirm that Plaintiff was treated by Dr. Belenchia for approximately one year, the Court notes that he completed his medical source statement the same day he conducted his initial examination of the claimant on June 8, 2010. Plaintiff's chief complaints at that time were neck, back, and shoulder pain, but Dr. Belenchia's clinic records reflect that she was subsequently treated primarily for elbow pain and sinus symptoms. Based on the initial examination, Dr. Belenchia opined that Plaintiff could frequently lift less than ten pounds and occasionally lift twenty pounds. He also opined that she could not sit, stand, or walk for longer than two hours in an eight-hour workday; would need to alternate sitting and standing at will; and, had postural, manipulative, and environmental limitations. That same day, Dr. Belenchia referred Plaintiff to a neurosurgeon, Dr. David Malloy, for an evaluation of her neck pain. Significantly, he did not await Dr. Malloy's examination findings before completing his medical source statement.[3]

On June 14, 2010, Plaintiff informed Dr. Malloy that she had been experiencing neck pain intermittently since 2008, which was now constant no matter her activity level

---

[3] ECF No. 6, pp. 237-241; 261-275.

5

and worse in the morning. She also complained of pain in her lower back. Dr. Malloy noted that Plaintiff had undergone two cervical spine surgeries and a left ulnar nerve surgery several years prior. On examination, he observed that Plaintiff had good muscle strength in her upper and lower extremities; her light touch sensations were intact; and, her reflexes were 1+ throughout both upper and lower extremities, with "[n]o true restriction to straight leg raising although it did cause her to have some increased pain in the low back area." He also observed that she had a very limited range of motion in both her cervical and lumbar spines due to discomfort, but her stance and gait were unremarkable. Cervical spine x-rays also showed moderate degenerative and spondylitic changes and a "good solid fusion at the C4-C5 level." Based on his examination findings, Dr. Malloy opined that Plaintiff had mechanical neck pain but did not require any further surgical intervention. He recommended instead that Plaintiff undergo physical therapy to address her symptoms, and opined that she would likely have "some ongoing complaints of neck pain throughout the remainder of her life," but with exercise, physical therapy, and intermittent use of mild anti-inflammatories, her symptoms would be reasonably well controlled.[4]

Dr. Belenchia's clinic records following Dr. Malloy's assessment confirm that Plaintiff was treated conservatively for her pain. In October 2010, Dr. Belenchia observed that Plaintiff had elbow pain with palpation, but no edema or erythema, and

---

[4] ECF No. 6, pp. 287-289.

diagnosed her with a right elbow osteoarthritic flare. As treatment, he recommended that she wear an elbow splint at night for immobilization and apply an ice pack as needed; he also prescribed anti-inflammatory and pain medications. In March 2011, Plaintiff complained that she experienced back pain that improved with pain medication. As treatment, Dr. Belenchia increased her pain medication and instructed her to follow up in three months. Muscle stretches and exercises were also discussed. As noted by the ALJ, neither Dr. Belenchia's examination findings nor his diagnoses established the severity of limitations described in his medical source statement.[5]

Dr. Belenchia's medical source statement is also inconsistent with the medical assessment of consulting examiner, Dr. Gary Gordon. In May 2010, Dr. Gordon observed that Plaintiff had a normal gait and ambulated without difficulty. She had a full range of motion in her back, but it was slow due to pain, stiffness, and discomfort. Her straight leg raises were negative for radicular pain but caused pain in her lower back. She also had normal grip strength and excellent gross manipulation in both hands. Dr. Gordon found no neurological abnormalities and noted that the examination of her upper extremities was unremarkable.[6]

Upon reviewing Dr. Gordon's examination findings, a state agency consultant opined that Plaintiff had the residual functional capacity to perform medium work.

---

[5]*Id.* at 261-275.

[6]ECF No. 6, pp. 226-227.

Plaintiff argues that the ALJ erred in assigning the consultant's opinion significant weight because the consultant did not have the benefit of reviewing the medical evidence developed after he submitted his opinion. However, as noted by the ALJ, the consultant's assessment was entitled to significant weight only to the extent that it was consistent with the totality of the evidence and a non-disability finding. The evidence as a whole indicated that Plaintiff had further limitations. Neither the consultant nor Dr. Belenchia's opinions were consistent with the medical evidence generated after their assessments.

Dr. Malloy concluded in June 2010 that Plaintiff's back pain was of a mechanical nature and could be reasonably controlled with anti-inflammatories and physical therapy. At an emergency room visit in September 2010 for an ear laceration, Plaintiff's neurological examination was normal and her neck, back and extremities were all non-tender; she also reported that she was independent in her daily activities. In addition, Dr. Belenchia's medical records from June 2010 through June 2011 show Plaintiff often had normal neurological and extremity examinations, and was treated conservatively for pain. He also adjusted her medication as needed, and discussed muscle stretches and exercises.

Substantial evidence supports the ALJ's decision to give Dr. Belenchia's opinion no weight. It was not supported by his own clinical findings and was inconsistent with competing first-hand medical evidence from Drs. Malloy and Gordon. Plaintiff's contention that Dr. Belenchia's opinion should nevertheless prevail because he is a treating physician is without merit. "[O]rdinarily the opinions, diagnoses, and medical

8

evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott,* 770 F.2d at 485. However, an ALJ is free to reject any opinion, in whole or in part, when good cause is shown, i.e., when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995). The ALJ had good cause here.

The ALJ found that Plaintiff's subjective complaints were only partially credible. At her administrative hearing, she testified that she could not sit or stand for longer than 15 minutes at a time, and has to lie down for 30 minutes during the day because of the pain. She also testified that she has a limited range of motion in her neck, reduced strength in her left arm, and has difficulty bending or squatting. In a disability report completed in April 2010, Plaintiff reported that she could do light housework, cook once or twice a week, shop, crochet, and attend church once per week. She also reported that she experienced back pain if she sat for more than one or two hours, and could walk for 30 minutes before needing to rest. However, medical records from Drs. Belenchia and Malloy failed to confirm functional limitations to the degree that Plaintiff alleged. And, while she testified that her pain never completely goes away, she acknowledged that her pain medication reduces her pain without side effects. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."

*Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).[7]

Given the evidence as stated, the ALJ concluded that Plaintiff had the residual functional capacity to perform light unskilled work, except she is limited to: lifting/carrying and pushing/pulling twenty pounds occasionally and ten pounds frequently; occasionally using her left upper extremity; and, standing, walking and sitting for six hours in an eight-hour workday.  Substantial evidence supports this finding.

As her next point of error, Plaintiff alleges that the ALJ failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").  In support, she cites Social Security Ruling 00-4p, which provides that the ALJ "has an affirmative responsibility to ask about any possible conflict between [the vocational expert's] evidence and information provided in the DOT."  SSR 00–4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).  When the evidence provided by the vocational expert is "not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the [vocational expert's] evidence to support a determination or decision that the individual is or is not disabled." *Id.*

As noted *supra*, the ALJ determined that Plaintiff could perform light unskilled work subject to the limitations of the residual functional capacity outlined above.  In response to a hypothetical with these limitations, the vocational expert testified that Plaintiff could not perform her past work as a refurbishing operator, but could work as a

---

[7]ECF No. 6, pp.  28-58; 154-161.

highway-flagger, gate-attendant, and motel desk-clerk.[8]  Without further inquiry from the ALJ, the vocational expert acknowledged that the Dictionary of Occupational Titles classifies gate-attendant and motel desk-clerk as semiskilled jobs, but testified that gate-attendant could be performed at an "entry level."  As Plaintiff correctly points out, he did not make the same distinction with regard to motel desk-clerk.

In compliance with SSR 00-4p, the ALJ acknowledged the conflict between the vocational expert's testimony and the DOT, and concluded that the vocational expert's entry-level explanation reasonably resolved the conflict.  Plaintiff nevertheless argues that the ALJ's reliance on the vocational expert's testimony was error because the meaning of "entry level" is unclear and presumes that "entry level" and unskilled jobs are synonymous.  The Court finds this argument compelling only with regard to the motel desk-clerk job because the vocational expert did not specify that Plaintiff could perform it at the entry level.  It is otherwise unavailing.

The Fifth Circuit has consistently held that an ALJ may properly rely on vocational expert testimony to make findings about the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. 20 C.F.R. § 404.1566(e); *Leggett*, 67 F.3d at 565; *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir.1995).  Unlike the DOT, which gives only general descriptions of job duties, a

---

[8]The Court notes that the hearing transcript indicates that the third job was inaudible, but both parties agree that motel desk-clerk was the third job identified by the vocational expert.

"vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields v. Bowen,* 805 F.2d 1168, 1170-71 (5th Cir. 1986).

In this case, the vocational expert expressly testified that despite her impairments, Plaintiff could perform work as an entry level gate-attendant. Thus, the ALJ did not commit reversible error in relying on the vocational expert's testimony that the claimant could perform work as an entry level gate-attendant. Plaintiff had an opportunity to cross-examine the vocational expert about the issue at the administrative hearing, but failed to do so. "Claimants should not be permitted to scan the record for implied or unexplained conflicts . . . and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). The ALJ's finding that Plaintiff could perform unskilled work as a highway-flagger and entry level gate-attendant is supported by substantial evidence.

The undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports his decision. For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the

Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 1st day of August 2014.

                                                                             /s/  Linda R. Anderson  
                                                UNITED STATES MAGISTRATE JUDGE